Richard S. Meisner, Esq.
Matthew A. Stoloff, Esq.
**JARDIM, MEISNER & SUSSER, PC**
30B Vreeland Road, Suite 201
Florham Park, New Jersey 07932
(973) 845-7640
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARMAND FUX, VICKI LYNN GUVEIYIAN, ALLAN DOERR, and WILLIAM PANGORAS,<br><br>Plaintiffs,<br><br>vs.<br><br>THE PLAN ADMINISTRATOR OF THE PARK PLACE ENTERTAINMENT CORPORATION EXECUTIVE DEFERRED COMPENSATION PLAN and THE PLAN ADMINISTRATOR OF THE HARRAH'S ENTERTAINMENT, INC. EXECUTIVE SUPPLEMENTAL SAVINGS PLAN II,<br><br>Defendants. | Civil Action No._____<br><br><br>**COMPLAINT SEEKING TO<br>CLARIFY PLAN RIGHTS** |

Plaintiffs ARMAND FUX, VICKI LYNN GUVEIYIAN, ALLAN DOERR, and WILLIAM PANGORAS ("Plaintiffs"), by and through undersigned counsel, and by way of this Complaint seeking to clarify rights under plans subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.* ("ERISA"), against THE PLAN ADMINISTRATOR OF THE PARK PLACE ENTERTAINMENT CORPORATION EXECUTIVE DEFERRED COMPENSATION PLAN, and THE PLAN

ADMINISTRATOR OF THE HARRAH'S ENTERTAINMENT, INC. EXECUTIVE SUPPLEMENTAL SAVINGS PLAN II ("Defendants"), allege as follows:

## PRELIMINARY STATEMENT

Plaintiffs, being participants of the Plans, bring this action pursuant to the Section 502(A)(1)(b) of ERISA, 29 U.S.C. § 1132(a)(1)(B). Plaintiffs ask the Court to clarify rights under the Park Place Entertainment Corporation Executive Deferred Compensation Plan and the Harrah's Entertainment, Inc. Executive Supplemental Savings Plan II (together, the "Plans"), and seek other appropriate equitable relief.

## JURISDICTION AND VENUE

1. This Court has jurisdiction by reason of 29 U.S.C. § 1132(e)(1), this being an action pursuant to 29 U.S.C. § 1132(a)(1)(B) brought by participants in certain deferred compensation ERISA benefit plans sponsored by Defendants to clarify Plaintiffs' rights to past and future benefits under the terms of the Plans.

2. This Court also has jurisdiction pursuant to 29 U.S.C. § 1132(e)(1), this also being an action pursuant to 29 U.S.C. § 1132(a)(3) for equitable relief, as necessary, to give Plaintiffs complete relief.

3. Declaratory and injunctive relief are authorized under 28 U.S.C. §§ 2201 and 2202, respectively, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by 29 U.S.C. §§ 1132(a)(3)(A), and (a)(3)(B), ERISA § 502(a)(1)(B).

4. ERISA permits an action to be brought "[i]n the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Venue is proper in New Jersey because Defendants may be found in the State of New Jersey and are licensed to conduct gambling operations in the State of New Jersey.

5. An ERISA pension plan can be found in a judicial district if it has "minimum contacts" with that district that would support the exercise of personal jurisdiction. Venue is properly laid in the District where a plan participant performs his work and earns Plan benefits.

## RIPENESS FOR ADJUDICATION

6. This matter presents a justiciable case or controversy that is ripe for adjudication.

7. Plaintiffs are suffering injury as a result of the continuing uncertainty over their pension rights and benefits created by Defendants' conduct.[1]

8. Plaintiffs' interests are adverse to those of Defendants for the reasons described herein.

9. ERISA expressly permits a plan participant to bring suit in federal court "to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

## EXHAUSTION OF REMEDIES

10. Exhaustion of Plan remedies is not required because the issues involved in this action do not involve recovery or calculation of benefits, but rather are legal questions pertaining to corporate liability.

11. Exhaustion of Plan remedies would be futile because the "plan sponsors" of the Plans, and several "employers" under the Plans have sought or will seek to avoid or disclaim liabilities under the Plans in connection with *In re Caesars Entertainment Operating Company, Inc.*, Case No. 15-01145 (ABG), U.S. Bankruptcy Court, Northern District of Illinois.

---

[1] By way of example, but not by way of limitation, Plaintiffs may have additional causes of action (e.g., breach of fiduciary duty under ERISA and violations of ERISA's prohibited transaction rules) that only can be determined upon the granting of relief sought in this action Plaintiffs expressly reserve the right to amend this Complaint should such determination be made.

3

## THE PARTIES

12. Armand Fux is an individual residing in Huntsville, Alabama. He is a participant in the Park Place Entertainment Corporation Executive Deferred Compensation Plan (sometimes also referred to as the "Park Place EDCP").

13. Vicki Lynn Guveiyian is an individual who resides in Egg Harbor Township, New Jersey. She is a participant in the Park Place EDCP and Harrah's Executive Supplemental Savings Plan II (sometimes also referred to as the "ESSP II"). The Park Place EDCP and the ESSP II are collectively referred to herein as the "Plans."

14. Allan Doerr is an individual residing in Marmora, New Jersey. He is a participant in the Park Place EDCP and ESSP II.

15. William Pangoras is an individual residing in Ocean City, New Jersey. He is a participant in the Park Place EDCP and ESSP II.

16. All of the Plaintiffs are "participants" of the respective Plans within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1002(7).

17. Defendant, Plan Administrator of the Harrah's Entertainment, Inc. Executive Supplemental Savings Plan II, is the "plan administrator" of the ESSP II within the meaning of § 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

18. The ESSP II plan document explicitly states that Harrah's Entertainment, Inc. (as the "Company") is responsible for the payment of contributions to plan participants. Upon information and belief, Harrah's Entertainment, Inc., is now named Caesars Entertainment Corporation.

19. Defendant, Plan Administrator of the Park Place Entertainment Corporation Executive Deferred Compensation Plan, is the "plan administrator" of the Park Place EDCP within the meaning of § 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

20. The Park Place EDCP plan document explicitly states that Harrah's Entertainment, Inc. (as the "Company") is responsible for the plan. Upon information and belief, Harrah's Entertainment, Inc., is now named Caesars Entertainment Corporation.

## FACTUAL ALLEGATIONS

21. In or about January 2004, Park Place Entertainment Corporation was renamed Caesars Entertainment, Inc.

22. In or about June 2005, Harrah's Entertainment, Inc. acquired Caesars Entertainment, Inc.

23. In or about November 2010, Harrah's Entertainment, Inc. was **renamed Caesars Entertainment Corporation**.

24. Caesars Entertainment Corporation is not in bankruptcy or insolvent.

25. In order to attract and retain highly skilled and qualified executives and managers, Caesars Entertainment Corporation offered their high level executive employees various tax savings retirement plans.

26. One of these plans is the Park Place EDCP.

27. Plaintiffs Fux, Guveiyian, Doerr, and Pangoras are plan participants of the Park Place EDCP.

28. Another one of these plans is the ESSP II.

29. Plaintiffs Guveiyian, Doerr, and Pangoras are plan participants of the ESSP II.

30. Plans like Park Place EDCP and ESSP II are commonly referred to as "top hat" plans.

31. Top hat plans are unfunded plans maintained by the employer for the benefit of high level executives. As such, top hat plans are exempt from ERISA's provisions on participation and vesting, funding and fiduciary responsibility. 29 U.S.C. § 1051(2). However, top hat plans are covered by ERISA's enforcement provisions. 29 U.S.C. §§ 1114-1117. Top hat plans are also subject to Part 1 of Title 1 of ERISA, which includes reporting and disclosure requirements. 29 U.S.C. §§ 1021-1031.

32. Each of the Plaintiffs expected that Caesars Entertainment Corporation would honor and pay the deferred compensation benefits offered to each of them as participants of and pursuant to the ESSP II and Park Place EDCP plans. However, Caesars Entertainment Corporation has sought to disclaim those liabilities through complex corporate transactions and through complex bankruptcy proceedings.

## The Park Place EDCP Plan

33. Caesars Entertainment Corporation is responsible for the payment of contributions to Park Place EDCP plan participants.

34. On August 3, 2007, Harrah's Entertainment, Inc. executed The Amendment and Restatement of the Park Place Entertainment Corporation Executive Deferred Compensation Plan (Effective as of August 3, 2007). That Plan document stated, in part: "Effective as of June 13, 2005, Caesars Entertainment, Inc. (formerly named Park Place Entertainment Corporation) was merged with and into Harrah's Operating Company, Inc., a Delaware corporation and a wholly-owned subsidiary of Harrah's Entertainment, Inc., a Delaware corporation. The Plan was continued by Harrah's Operating Company, Inc., as successor to Caesars Entertainment, Inc."

35. There is not a single reference to Caesars Entertainment Operating Company in the Park Place EDCP Plan document. However, Harrah's Operating Company, Inc. was later renamed Caesars Entertainment Operating Company.

36. In or about March 17, 2011, Caesars Entertainment Corporation and Caesars Entertainment Operating Company filed the S-4 form with the U.S. Securities Exchange Commission. There it was explained that "the term "Caesars" refers to Caesars Entertainment Corporation (formerly Harrah's Entertainment, Inc.), and the "Company," "we," "us" and "our" refer to Caesars and its consolidated subsidiaries, and "CEOC" refers to Caesars Entertainment Operating Company, Inc. (formerly Harrah's Operating Company, Inc.)"

37. The March 17, 2011 S-4 filing contains a chart summarizing the organizational structure of Caesars Entertainment Corporation and Caesars Entertainment Operating Company. This chart explains that Caesars Entertainment Operating Company is a subsidiary of Caesars Entertainment Corporation, and that Caesars Entertainment Corporation is the guarantor.

38. The March 17, 2011 S-4 filing also states in part that one of the five inactive deferred compensation plans is the Park Place EDCP Plan.

39. In its 10-Q form filed with the U.S. Securities Exchange Commission on November 14, 2014, Caesars Entertainment Operating Company, Inc. stated, "We have one active and five frozen deferred compensation plans. . . ." Among these five deferred compensation plans is the Park Place EDCP.

40. On or about January 15, 2015, Caesars Entertainment Operating Company filed for Chapter 11 in the United States Bankruptcy Court, Northern District of Illinois.

41. As a result of the bankruptcy proceedings, Caesars Entertainment Corporation questioned whether it was liable for the top hat plans because the liabilities of the top hat plans began showing up on Caesars Entertainment Operating Company's books.

42. On March 26, 2015, Timothy Donovan, Executive Vice President, General Counsel and Chief Compliance Officer for Caesars Entertainment Corporation, testified at the Nevada State Gaming Control Board that he did not know why the top hat plans are showing up on Caesars Entertainment Operating Company's balance sheet. As Mr. Donovan testified:

> As regards the deferred compensation plan, we have already started to look at that and ask questions about who owns it, who owns the asset, who has the liability, is it a joint liability, if it is our asset's, CEC's asset, why it is showing up on CEOC's balance sheet historically. So yes, there was a lot of work that went into that **and is still ongoing**. (emphasis added).

43. At a hearing before the Nevada State Gaming Control Board on May 13, 2015, Scott Wiegand, Senior Vice President, Deputy General Counsel and Corporate Secretary for Caesars Entertainment Corporation, was unable to offer any clarification that Caesars Entertainment Corporation was responsible for past and future benefits of the Park Place EDCP:

> **Other deferred compensation plans, I mentioned there were five, that is two. The other three are a little bit more fact intensive.** In a number of cases the analysis requires us to look at the individual employment contracts and individual circumstances that in certain cases extend back a couple of decades. **So we are in the process of continuing our evaluation of those other three deferred compensation plans.**
>
> At this time we have been able to ascertain that at least an additional 12 million or so of liabilities should be booked at CEC, and we have turned those plans on as well for those participants. But we do need to continue that process for the remaining participants in the older plans and try and determine their individual circumstances. (emphasis added).

44. One of the three deferred compensation plans that Mr. Wiegand is referring to is the Park Place EDCP.

45. Since the Park Place EDCP Plan document expressly and unconditionally states that Harrah's Entertainment, Inc. (which has since been renamed Caesars Entertainment Corporation)

is responsible for the payment of benefits, it is unclear what information or facts are needed to determine who is responsible for future benefits to participants of Park Place EDCP beyond the plan language of the Plan document.

46. Caesars Entertainment Corporation has not stated with any degree of certainty whether any of the "12 million or so of liabilities" are allocated to the Park Place EDCP.

47. On July 24, 2015, Caesars Entertainment Corporation sent Plaintiffs a written agreement to execute. In that agreement, Caesars Entertainment Corporation stated that it would not honor its payment obligations under the Park Place EDCP unless Plan participants assented to additional terms and conditions set forth therein.

48. None of the Plaintiff-participants of the Park Place EDCP signed the agreement.

49. In its 10-Q filing with the U.S. Securities Exchange Commission, dated November 9, 2015, Caesars Entertainment Corporation stated that "As of September 30, 2015, Caesars has recorded in the accompanying financial statements $48 million in liabilities, representing the estate of its obligations under the [six] deferred compensation plans. . . . The additional liability in respect of these plans that Caesars has not recorded is approximately $27 million, as it was determined that this portion of the liability was attributable to CEOC [Caesars Entertainment Operating Company]."

50. Caesars Entertainment Corporation has not clarified how it determined that Caesars Entertainment Operating Company is liable for approximately $27 million of the obligations under the deferred compensation plans, including the Park Place EDCP.

51. Any attempt by Caesars Entertainment Corporation to relieve itself of the liabilities under the Park Place EDCP would violate the Plan and ERISA.

52. Caesars Entertainment Corporation has not stated with any degree of certainty that it is responsible for liabilities under Park Place EDCP for each respective Plaintiff.

### The ESSP II Plan

53. Caesars Entertainment Corporation is responsible for the payment of contributions to ESSP II plan participants.

54. Caesars Entertainment Corporation and Caesars Entertainment Operating Company state in its S-4 filing with the U.S. Securities Exchange Commission, dated March 17, 2011, that it "has one deferred compensation plan, the Executive Supplemental Savings Plan II ("ESSP II"), currently active. . . ."

55. In its 10-Q form filed with the U.S. Securities Exchange Commission, dated November 14, 2014, Caesars Entertainment Operating Company, Inc. states, "We have one active and five frozen deferred compensation plans. . . ." The active plan is the ESSP II.

56. On or about January 15, 2015, Caesars Entertainment Operating Company filed for Chapter 11 in the United States Bankruptcy Court, Northern District of Illinois.

57. As a result of the bankruptcy proceedings, Caesars Entertainment Corporation questioned whether it was liable for the top hat plans because the liabilities of the top hat plans appeared on Caesars Entertainment Operating Company's books.

58. On March 26, 2015, Timothy Donovan, Executive Vice President, General Counsel and Chief Compliance Officer for Caesars Entertainment Corporation, gave testimony to the Nevada State Gaming Control Board. At that event, Mr. Donovan testified as follows:

> There have been some questions as to whether the assets in the Rabbi trusts are assets of CEOC [Caesars Entertainment Operating Company], the debtor, or CEC [Caesars Entertainment Corporation]. Here is the distinction.
>
> Why is this important? It is important because if the assets belong to CEOC, they would be part of the bankruptcy estate and would be subject to claims of CEOC's creditors.

> And claims by participants under the deferred compensation plans like claims by participants under the SERPs, would be treated as general unsecured creditors of the bankruptcy estate.
>
> **However, if these assets belong to CEC, the Rabbi trusts, they would not be part of the bankruptcy estate of CEOC and** would not be available to continue – and would be available to continue – excuse me – **would be available to continue payments to plan participants.** Based on my review, and the review of some other people in the office, of the documents, I believe the Rabbi trust assets belong to CEC. . . .
>
> **[T]he documentation for the Rabbi trusts clearly provides that the assets upon paying all the liabilities, so everything above the liabilities, reverts back to CEC upon termination of the trust.** And CEC in fact was the grantor in those trusts.
>
> And the only two parties to those trusts are CEC, well, its predecessor, HEI, Harrah's Entertainment, and the trustee, and **the only party that can give direction to that trustee to dispense funds is CEC.**
>
> Let me assure you, I said there are some negotiations and discussions that need to be had, but **let me assure you, we, CEC, are claiming and will continue to claim ownership of these assets in the bankruptcy proceedings in order to resume payments to participants under the deferred compensation plan.** (emphasis added).

59. During a question and answer period, Mr. Donovan again confirmed that the liability of the deferred compensation plans belongs to Caesars Entertainment Corporation:

> COMMISSIONER MULROY: First of all, was it because of the language in the Rabbi trust that the deferred comps are considered a CEC [Caesars Entertainment Corporation] liability and not a CEOC [Caesars Entertainment Operating Company] liability?
>
> MR. DONOVAN: Yes.

60. Despite Mr. Donovan's declaration that the top hat plans are liabilities of Caesars Entertainment Corporation, Mr. Donovan does not know why the top hat plans are showing up on Caesars Entertainment Operating Company's balance sheet. As Mr. Donovan testified:

> As regards the deferred compensation plan, we have already started to look at that and ask questions about who owns it, who owns the asset, who has the liability, is it a joint liability, if it is our asset's, CEC's asset, why it is showing up on CEOC's balance sheet historically. So yes, there was a lot of work that went into that **and is still ongoing**. (emphasis added).

11

61. Notwithstanding Mr. Donovan's repeated assurances that Caesars Entertainment Corporation will take ownership of the deferred compensation plans, the Chief Executive Officer of Caesars Entertainment Operating Company sent a letter, dated March 27, 2015, to Plaintiffs informing them of a "deadline" in connection with Caesars Entertainment Operating Company's Chapter 11 action and notifying Plaintiffs that they should consider filing a proof of claim.

62. Adding to this confusion, Caesars Entertainment Corporation's Vice President, Russell Goldich, personally told Plaintiff William Pangoras in a telephone conference that the "CEC [Caesars Entertainment Corporation] made the determination that it's at least jointly and severally liable as CEOC [Caesars Entertainment Operating Company] for the plans themselves. . . ."

63. How Russell Goldich and/or Caesars Entertainment Corporation made the determination that Caesars Entertainment Corporation and Caesars Entertainment Operation Company "are jointly and severally liable" demands clarification.

64. On or about April 28, 2015, Plaintiffs received correspondence from Caesars Entertainment Corporation stating that Plan participants must file a Proof of Claim "in order to preserve their current or future Deferred Compensation Plan rights and benefits."

65. On or about May 11, 2015, Plaintiffs received notice from Caesars Entertainment Corporation that distribution payouts to participants in payout status in the ESSP II will resume, "restoring both current and former employees to their positions under these plans as they were before the Chapter 11 filing. Any participant who missed a payout between the suspension of payouts in January and now will receive a 'catch up' distribution with all missed payouts."

66. In May 13, 2015, another round of testimony was given at the Nevada State Gaming Control Board. At that hearing, Scott Wiegand, Senior Vice President, Deputy General Counsel and Corporate Secretary for Caesars Entertainment Corporation, testified as follows:

> This week we filed our 10-Q with the SEC, and in that we noted that the parent entity, CEC, has reported as a liability the obligations to make payments to the participants in the ESSP and the ESSP 2 plans. We sent a notice to those participants on Monday to inform them that if they are a prior employee that was receiving distributions, those distributions would resume, and that any interruption in those distributions, we would catch those up.
>
> MEMBER JOHNSON: So it would be retroactively made whole back to January 2015?
>
> MR. WIEGAND: That is correct. **We are in the process of those distributions resuming now and that notice has gone out.** Again, I'll reiterate to you, the largest number of participants are in those plans. There is about $40 million in liability that CEC booked, and it also booked, **there is a Rabbi trust that secures, that has assets that are meant to backstop the obligations on the deferred compensation for those plans. We booked that asset as well at the CEC level.** That is not without contention in our bankruptcy process at CEOC. (emphasis added).

67. Notwithstanding Scott Wiegand's testimony, on May 19, 2015, Caesars Entertainment's Vice President of Compensation, Russell Goldich, sent Plaintiffs an email reminding them to file Proof of Claim before the May 26, 2015 deadline.

68. Any attempt by Caesars Entertainment Corporation to relieve itself of the obligations and liabilities to pay Plaintiffs their benefits would violate the terms of the Plan and ERISA.

69. Caesars Entertainment Corporation has not stated with any degree of certainty that it is responsible for the liabilities under the ESSP II and has intentionally or negligently caused confusion among the Plans' participants.

## FIRST CAUSE OF ACTION

### CLARIFY THAT CAESARS ENTERTAINMENT CORPORATION IS RESPONSIBLE FOR ALL LIABILITIES UNDER THE PARK PLACE EXECUTIVE DEFERRED COMPENSATION PLAN FOR EACH RESPECTIVE PLAINTIFF.

70. Plaintiffs hereby adopt, incorporate and restate the foregoing paragraphs as if fully set forth herein.

71. Plaintiffs assert that the deferred compensation benefits earned by them under the Park Place EDCP remain the obligation of Caesars Entertainment Corporation and not their subsidiaries.

72. Plaintiffs seek clarification that Caesars Entertainment Corporation is responsible for all liabilities under the Park Place EDCP for each of the respective Plaintiffs.

## SECOND CAUSE OF ACTION

### CLARIFY THAT CAESARS ENTERTAINMENT CORPORATION IS RESPONSIBLE FOR ALL LIABILITIES UNDER THE EXECUTIVE SUPPLEMENTAL SAVINGS PLAN II FOR EACH RESPECTIVE PLAINTIFF.

73. Plaintiffs hereby adopt, incorporate and restate the foregoing paragraphs as if fully set forth herein.

74. Plaintiffs assert that the deferred compensation benefits earned by them under the ESSP II remain the obligation of Caesars Entertainment Corporation and not their subsidiaries.

75. Plaintiffs seek clarification that Caesars Entertainment Corporation is responsible for all liabilities under the ESSP II for each of the respective Plaintiffs.

## THIRD CAUSE OF ACTION

### CLARIFY WHICH AFFILIATED ENTITIES OF CAESARS ENTERTAINMENT CORPORATION IS THE "EMPLOYER" OF EACH PLAINTIFF WITH RESPECT TO ALL PARTICULAR PERIODS OF TIME.

76. Plaintiffs hereby adopt, incorporate, and restate the foregoing paragraphs as if fully set forth herein.

77. In the event that Caesars Entertainment Corporation is not responsible for some or all liabilities under the Plans, the Plaintiffs seek clarification which affiliated entities of Caesars Entertainment Corporation is the "Employer" of each Plaintiff, within the meaning of the Plans, with respect to all particular periods of time.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray that this Court enter judgment as follows:

A. Issuing a Judgment clarifying that Caesars Entertainment Corporation is responsible for all liabilities under the ESSP II.

B. Issuing a Judgment clarifying that Caesars Entertainment Corporation is responsible for all liabilities under the Park Place EDCP.

C. Issuing a Judgment clarifying which affiliated entitles of Caesars Entertainment Corporation is the "employer" of each plaintiff with respect to all particular periods of time.

D. Awarding Plaintiffs:

(1) their costs, disbursements and expenses herein;

(2) reasonable attorneys' fees and costs; and

(3) such other and further relief as the Court may deem just, proper and equitable.

Dated: February 18, 2016

                                       Respectfully submitted,

                                       JARDIM MEISNER & SUSSER, P.C.
                                       Attorneys for Plaintiffs
                                       Armand Fux, Vicki Lynn Guveiyian, Allan Doerr,
                                       and William Pangoras

                                       By: _____
                                                  RICHARD S. MEISNER