# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

ARMAND FUX, VICKI LYNN
GUVEIYIAN, ALLAN DOERR, and
WILLIAM PANGORAS,

                    *Plaintiffs,*

          v.

THE PLAN ADMINISTRATOR OF THE
PARK PLACE ENTERTAINMENT
CORPORATION EXECUTIVE DEFERRED
COMPENSATION PLAN, and THE PLAN
ADMINISTRATOR OF THE HARRAH'S
ENTERTAINMENT, INC. EXECUTIVE
SUPPLEMENTAL SAVINGS PLAN II,

                    *Defendants.*

No. 1:16-cv-00883-JBS-AMD

Judge Jerome B. Simandle

Magistrate Ann Marie Donio

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR TO TRANSFER VENUE

**Of Counsel and On the Brief:**
Richard S. Meisner

**On the Brief:**
Matthew A. Stoloff
Dennis F. Gleason

## <u>TABLE OF CONTENTS</u>

Table of Authorities ........................................................................................iv

Preliminary Statement.......................................................................................1

Counterstatement of Facts..................................................................................3

Standard of Review............................................................................................6

Argument............................................................................................................7

      POINT I .....................................................................................................7

              EXHAUSTION OF ADMINISTRATIVE REMEDIES
              DOES NOT APPLY AS THE PLAN PARTICIPANTS
              ARE SEEKING A JUDICIAL DETERMINATION OF
              WHO IS THE EMPLOYER, NOT A CLAIM FOR
              BENEFITS .........................................................................7

                  A. Plan Participants do not seek a claim for benefits. ...............9

                  B. The Plans do not require exhaustion of administrative
                     remedies. ...........................................................................11

                  C. It would have been futile for the Plan Participants to
                     exhaust their administrative remedies ................................12

      POINT II ...................................................................................................16

              THE PLAN PARTICIPANTS HAVE SUFFICIENTLY
              ALLEGED ALLEGATIONS OF INJURY. .......................................16

POINT III ........................................................................................17

    BECAUSE CEC IS A GUARANTOR OF THE PLAN
    AND CEOC IS NOT THE PLAN ADMINISTRATOR,
    IT IS NEITHER A NECESSARY NOR AN
    INDISPENSIBLE PARTY ...............................................................17

        A. CEOC is not a proper defendant..........................................18

        B. CEOC is not a necessary party ...........................................20

            1.  CEOC's presence is not required for
               complete relief ................................................21

            2.  There is no risk of "inconsistent rulings." .....................22

        C. CEOC is not an indispensable party ....................................23


    POINT IV .......................................................................................25

    THE RELIEF SOUGHT BY THE PLAN PARTICIPANTS
    IS INDEPENDENT OF THE ISSUES IN THE CEOC
    BANKRUPTCY...............................................................................25

        A. This action is not "related to" CEOC's bankruptcy
           proceeding..........................................................................25

        B. Venue is proper in the District of New Jersey....................29

        C. ERISA mandates that this action remain in a
           U.S. District Court .............................................................31


Conclusion .......................................................................................31

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Abrams v. Gen. Nutrition Co.*,
    2006 U.S. Dist. LEXIS 68574 (D.N.J. Sept. 25, 2006)................................30

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2008)...............................................................................6

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007)...............................................................................6

*Berger v. Edgewater Steel Co.*,
    911 F.2d 911 (3d Cir. 1990) ......................................................................12

*Broadcom Corp. v. Qualcomm Inc.*,
    501 F.3d 297 (3d Cir. 2007) ............................................................6

*Carducci v. Aetna U.S. Healthcare*,
    247 F.Supp.2d 596 (D.N.J. 2003)...................................................18

*Celotex Corp v. Edwards,*
    514 U.S. 300 (1995)................................................................26

*Ciotti v. Meadowlands Hosp. Med. Ctr.*,
    2015 U.S. Dist. LEXIS 2036 (D.N.J. Jan. 7, 2015)......................................13

*Commc'ns Workers of Am. v. Am. Tel. & Tel. Co.*,
    40 F.3d 426, 309 U.S. App. D.C. 170 (D.C. Cir. 1994)................................12

*Curcio v. John Hancock Mutual Life Insurance Co.*,
    33 F.3d 226, 233 (3d Cir. 1994) ...................................................18

*D'Amico v. CBS Corp.*,
    297 F.3d 287 (3d Cir. 2002) ...................................................8, 10

*Deblasio v. Cent. Metals, Inc.*,
    2014 U.S. Dist. LEXIS 87666 (D.N.J. June 27, 2014)....................................8

*DePace v. Matsushita Elec. Corp. of Am.*,
   257 F.Supp.2d 543 (E.D.N.Y. 2003) ............................................................15

*Evans v. Employee Benefit Plan, Camp Dresser & McKee, Inc.*,
   311 Fed. Appx. 556 (3d Cir. 2009)....................................................... 18-19

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) ...........................................................................7

*Franco v. Connecticut Gen. Life Ins. Co.*,
   818 F. Supp.2d 792 (D.N.J. 2011)..................................................................7

*Gambino v. Arnouk*,
   232 F. App'x 140 (3d Cir. 2007)..................................................................13

*Garratt v. Knowles*,
   245 F.3d 941 (7th Cir. 2001) ........................................................................19

*Graden v. Conexant Systems Inc.*,
   496 F.3d 291 (3d Cir. 2007) .........................................................................18

*Harrow v. Prudential Ins. Co. of Am.*,
   279 F.3d 244 (3d Cir. 2002) ...................................................................13, 14

*Hilton Worldwide, Inc. v. Caesars Entertainment Corp.*,
   532 B.R. 259 (E.D. Va. 2015) ...........................................................27, 28, 29

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) .........................................................................6

*In re Federal-Mogul Global, Inc.*,
   300 F.3d 368 (3d Cir. 2002) ....................................................................... 25

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995) ...........................................................................29

*Larami Ltd. v. Yes! Entm't Corp.*,
   244 B.R. 56 (D.N.J. 2000)..............................................................................29

*Lees v. Munich Reins. Am., Inc.*,
2012 U.S. Dist. LEXIS 49773 (D.N.J. April 9, 2012) ...................................12

*Ludwig v. Nynex Serv. Co.*,
838 F.Supp.769 (S.D.N.Y. 1993) ...................................................................12

*Matter of FedPak Sys., Inc.*,
80 F.3d 207 (7th Cir. 1996) ...........................................................................26

*Menendez v. UFCQ Local 888 Health Fund*,
2005 U.S. Dist. LEXIS 17034 (D.N.J. Aug. 11, 2005) ................................. 14

*Metro Life Ins. Co. v. Price*,
501 F.3d 271 (3d Cir. 2007) ............................................................................8

*Miller v. Chrysler Group, LLC*,
2012 U.S. Dist. LEXIS 173791 (D.N.J. Dec. 7, 2012) ..................................30

*Montvale Surgical Ctr., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*,
2013 U.S. Dist. LEXIS 15327 (D.N.J. Feb. 5, 2013) .....................................14

*Pacor, Inc. v. Higgins*,
743 F.2d 984 (3d Cir. 1984) ..............................................................26, 27, 28

*Phillips v. Cnty of Allegheny*,
515 F.3d 224 (3d Cir. 2008) ........................................................................6, 7

*Pinker v. Roche Holdings Ltd.*,
292 F.3d 361 (3d Cir. 2002) ............................................................................6

*Prudential Ins. Co. of Am. v. Barclays Bank PLC*,
2013 U.S. Dist. LEXIS 8992 (D.N.J. Jan. 22, 2013).....................................26

*Scheuer v. Rhodes*,
416 U.S. 232 (1974).........................................................................................6

*Smith v. Champion Int'l Corp.*,
573 F.Supp.2d 599 (D. Conn. 2008) .............................................................12

*Steel Workers Pension Trust v. Citigroup, Inc.*,
    295 B.R. 747 (E.D. Pa. 2003) ................................................................12, 26

*Tatum v. Chrysler Group, LLC*,
    2011 U.S. Dist. LEXIS 144831 (D.N.J. Dec. 16, 2011) ...............................30

*Van Doren v. Capital Research & Mgmt. Co.*,
    2010 U.S. Dist. LEXIS 138194 (D.N.J. Dec. 30, 2014) ...............................14

*Watermark Condo. Residences Ass'n, Inc. v. WCI Communities, Inc.*,
    2013 U.S. Dist. LEXIS 75842 (D.N.J. May 30, 2013)...................................30

*Zipf v. American Tel. and Tel. Co.*,
    799 F.2d 889 (3d Cir. 1986) ......................................................................8, 9

## Statutes:

28 U.S.C. § 1412 ................................................................................................29, 30

29 U.S.C. § 1132(a)(1)(B) ...................................................................................6, 18

29 U.S.C. § 1132(e) ................................................................................................31

29 U.S.C. § 1133 .....................................................................................................9

**Preliminary Statement**

This action seeks an answer to a straightforward question: Who is the Employer within the meaning of certain executive compensation plans? This question is important for two reasons. First, the Plans are "top hat" plans, which means that the plans are unfunded by definition and there is no fiduciary duty imposed on the plan administrators. Second, if, as alleged, Caesars Entertainment Corporation ("CEC") is the Employer within the meaning of the Plans, then CEC must cease making any further attempts to disclaim liability under the Plans.

The plaintiffs are plan participants who are current (or retired) employees of CEC, the non-debtor parent of Caesars Entertainment Operation Company ("CEOC"), and CEC's predecessors, including immediate predecessor Harrah's Entertainment, Inc. The Plan Participants are participants in the Park Place Executive Deferred Compensation Plan ("CEDCP") [1] and the Executive Supplemental Savings Plan II ("ESSP II") (collectively, "the Plans").

The Plan documents explicitly state that Harrah's Entertainment, Inc. (as the "Company") is responsible for the payment of contributions to plan participants. Harrah's Entertainment, Inc., was named Caesars Entertainment Corporation. CEC

---

[1] In their Complaint, the Plan Participants referenced the Park Place Executive Deferred Compensation Plan as "Park Place EDCP." The Plan Administrators refer to it as "CEDCP." To avoid confusion, we adopt Plan Administrators' acronym.

subsequently became responsible for the Plans and has always been obligated to make the payments provided for under the Plans.

Until on or around March 2014, CEOC was a wholly-owned subsidiary of CEC. Sometime thereafter, CEOC became a "majority owned" subsidiary of CEC. Subsequently, on January 15, 2015, CEOC filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois, Case Number 15-01145-ABG.

Once the bankruptcy proceedings were underway, CEC disclaimed obligations under the Plans and even stated that CEOC was liable for $27 million of the obligations under the deferred compensation plans. When the Nevada Gaming Commission confronted CEC regarding the Plans, CEC's executives danced around the issue, stating that they were looking into it. One key CEC executive even told the Commission that CEC would "claim ownership of the assets." Despite presenting positive news to the Commission, CEC continued to disclaim liability by asking plan participants to sign Proofs of Claim in connection with the CEOC bankruptcy proceeding and to sign an agreement containing new terms and conditions in order to receive payments.

The Plan Administrators assert that this action must be dismissed because the Plan Participants failed to exhaust their administrative remedies. Since this is not an action for benefits, the Plan Participants were not required to exhaust their

administrative remedies.  Moreover, the Plan documents do not require exhaustion of administrative remedies independent of a claim for benefits.   The Plan Administrators' second argument – that CEOC is a "necessary" or "indispensable" party – fails because CEOC is not a proper party in an ERISA case.  Finally, the Plan Administrators' argue that venue should be transferred to Illinois because this action is "related to" CEOC's bankruptcy proceedings.  This argument also fails because the Plan Participants' request for equitable relief is non-monetary and poses no direct economic impact on CEOC's bankruptcy estate.

For the reasons set forth below, the Plan Administrators' motion to dismiss or to transfer venue must be denied.

## Counterstatement of Facts

Below is a summary of facts as set forth in the Plan Participants' Complaint.

Plaintiffs Armand Fux, Vicki Lynn Guveiyian, Allan Doerr, and William Pangoras are plan participants in the Park Place Entertainment Corporation Executive Deferred Compensation Plan ("CEDCP").  (Complaint, ¶¶ 12-16, 27.) Additionally, Plaintiffs Guveiyian, Doerr, and Pangoras are plan participants in the Harrah's Executive Supplemental Savings Plan II ("ESSP II").  (*Id.*, ¶¶ 13-16, 29.)

The CEDCP and ESSP II plans are "top hat" plans, which are unfunded plans maintained by the employer for the benefit of high level executives.  (*Id.*, ¶ 31.) Although top hat plans are exempt from ERISA's provisions on participation and

3

vesting, funding and fiduciary responsibility, such plans are nonetheless covered by ERISA's enforcement provisions and are subject to Part 1 of Title 1 of ERISA. (*Id.*, ¶ 31.)

The ESSP II plan document explicitly states that Harrah's Entertainment, Inc. (as the "Company") is responsible for the payment of contributions to plan participants. (*Id.*, ¶ 18.) The CEDCP plan document explicitly states that Harrah's Entertainment, Inc. (as the "Company") is responsible for the plan. (*Id.*, ¶ 20.) Harrah's Entertainment, Inc., was named Caesars Entertainment Corporation ("CEC"). (*Id.*, ¶ 23.) CEC subsequently became responsible for the Plans. (*Id.*, ¶ 45, 53.)

Through complex corporate transactions and bankruptcy proceedings (as well as other deceptive activities), CEC has sought to disclaim the liabilities under the Plans.

First, notwithstanding the clear and express language of the Plan documents, CEC has questioned that it is liable for payments under the Plans. (*Id.*, ¶¶ 40-43, 56-60.)

Second, CEC has asserted that its subsidiary, Caesars Entertainment Operating Company ("CEOC") may be responsible for payments under the Plans, even though CEC is the guarantor. (*Id.*, ¶¶ 37, 41-46, 51-60.)

Third, CEOC filed for Chapter 11.  *In re Caesars Entertainment Operating Company, Inc.*, Case No.  15-01145 (ABG), U.S. Bankruptcy Court, Northern District of Illinois.  (Complaint, ¶ 40.)  Not long before CEOC filed for bankruptcy, however, it was a wholly owned subsidiary of CEC.  (Certification of Richard S. Meisner, Exhibit 1, p. 3.)[2]  Since CEC so strongly believed that CEOC was responsible for payments of the Plans, CEC asked that Plaintiffs file Proofs of Claim in connection with CEOC's bankruptcy proceeding.  (*Id.*, ¶¶ 61, 64, 67.)

Fourth, CEC asked CEDCP participants to execute a written agreement which required that participants assent to additional terms and conditions before CEC would agree to honor its payment obligations.  (*Id.*, ¶ 47.)  None of the Plaintiff-participants signed the agreement.  (*Id.*, ¶ 48.)

Fifth, despite testimony to the Nevada Gaming Commission that it was looking into it, CEC still has not stated with any degree of certainty that it is responsible for the liabilities under the Plans.  (*Id.*, ¶¶ 42, 43, 60.)

In light of CEC's unclear testimony presented at the Nevada Gaming Commission and its attempts to disclaim liability under the Plans, the Plan

---

[2] The Plan Administrators argue that this Court should take judicial notice of the SEC filings that Plan Administrators attached to their papers.  (Def. Br., ECF 12-1, fn. 5.)  If this Court does so, Plan Participants respectfully request that this Court take judicial notice of the SEC filing attached to the Certification of Richard S. Meisner.  Prior to CEOC's bankruptcy proceedings on January 15, 2015, CEC reported to the Securities Exchange Commission on March 17, 2014 that CEOC was a **wholly-owned subsidiary** of CEC.

Participants brought this action pursuant to the Section 502(A)(1)(b) of ERISA, 29 U.S.C. § 1132(a)(1)(B) and seek non-monetary equitable relief.  Specifically, the Plan Participants seek clarification as to who is the Employer within the meaning of the Plans.  That question will help the Plan Participants understand who is truly liable for the payments under the Plans.

## STANDARD OF REVIEW

A complaint satisfies pleading requirements and will survive a FED. R. CIV. P. 12(b)(6) motion to dismiss when it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)); *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 306 (3d Cir. 2007).

For purposes of a 12(b)(6) motion to dismiss, a Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

In determining the merits of a 12(b)(6) motion, the issue that a Court must weigh "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S.

232, 236 (1974)); *Franco v. Connecticut Gen. Life Ins. Co.*, 818 F. Supp.2d 792, 807 (D.N.J. 2011).

The Third Circuit has established a two-part analysis to be used when evaluating the merits of a motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, a court should separate the factual and legal elements of a claim, accepting all facts as true. *Id.* at 210-11. Second, the district court must determine whether the facts alleged in the complaint are sufficient to show that a plaintiff has a "plausible claim for relief." *Id.* at 211 (citation omitted). Additionally, the Third Circuit has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 236.

## ARGUMENT

### POINT I

#### EXHAUSTION OF ADMINISTRATIVE REMEDIES DOES NOT APPLY AS THE PLAN PARTICIPANTS ARE SEEKING A JUDICIAL DETERMINATION OF WHO IS THE EMPLOYER, NOT A CLAIM FOR BENEFITS.

As previously noted, the thrust of this action is to obtain a judicial declaration as to who is the employer within the meaning of the Plans. The Plan Administrators instead inject a flawed premise, namely that the action is one for a claim of benefits.

Based on that flawed premise, the Court need not consider the matter of whether administrative remedies should have been exhausted.

The exhaustion of administrative remedies under ERISA is a "nonjurisdictional affirmative defense." *Metro Life Ins. Co. v. Price*, 501 F.3d 271, 280 (3d Cir. 2007). Exhaustion is a "judicially-crafted doctrine" which "places no limits on a court's adjudicatory power." *Id.*, at 279 (citations omitted).

A "[p]laintiff is not required to plead facts showing that he exhausted his remedies." *Deblasio v. Cent. Metals, Inc.*, 2014 U.S. Dist. LEXIS 87666, at *9 (D.N.J. June 27, 2014). When a defendant asserts that exhaustion is required, the plaintiff has the burden of establishing that exhaustion was not required, or that exhaustion would have been futile. *See, e.g., Zipf v. American Tel. and Tel. Co.*, 799 F.2d 889, 892-93 (3d Cir. 1986); *D'Amico v. CBS Corp.*, 297 F.3d 287, 291 (3d Cir. 2002).

Here, there are two reasons why the Plan Participants were not required to exhaust their administrative remedies. <u>First</u>, this is not a claim for benefits. The face of the Plan Participants' Complaint is clear that they seek clarification as to who is the Employer within the meaning of the Plans and request only equitable remedies that are independent of a claim for benefits. <u>Second</u>, the Plan documents that the Plan Administrators rely upon do not require that plan participants exhaust their administrative remedies independent of a claim for benefits. To the extent to which

8

exhaustion of administrative remedies was required, it would have been an exercise in futility.

### A. Plan Participants do not seek a claim for benefits.

The Complaint makes it clear that the Plan Participants seek a judgment as to who is the Employer within the meaning of the Plans. As such, this is not a claim for benefits. Under such circumstances, exhaustion is not required.

Requiring plan participants to exhaust their administrative remedies by addressing their complaints is confined to situations where claims for benefits have been denied. 29 U.S.C. § 1133 ("every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose **claim for benefits** has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.") (emphasis added.)

As discussed by the Third Circuit, the policy reasons for exhaustion of administrative remedies for denial of benefits is to ensure

> that the appeals procedures mandated by Congress will be employed, permits officials of benefit plans to meet the responsibilities properly entrusted to them, encourages the consistent treatment of claims for benefits, minimizes the costs and delays of claim settlement in a nonadversarial settling, and creates a record of the plan's rationales for denial of the claim.

*Zipf v. American Tel. and Tel. Co.*, 799 F.2d 889, 892-93 (3d Cir. 1986).

9

Contrary to the Plan Administrators' assertion, the Plan Participants have not alleged that they have been denied benefits.  The Plan Administrators point to no allegation in the Complaint to support this.  The Plan Participants do not even allege an ERISA claim for benefits.  Where the issue does not involve the recovery of benefits, a plaintiff is not required to exhaust administrative remedies.  *D'Amico v. CBS Corp.*, 297 F.3d 287, 291 (3d Cir. 2002) (explaining that exhaustion is required "in some, but not all, ERISA cases" and where plaintiffs bring claims independent of a claim for benefits, no exhaustion is required.); *see also Id.*, fn. 3 ("[O]ur exhaustion analysis turns on whether plaintiffs' statutory allegations amount to a claim for benefits").

The Plan Administrators also assert that "[t]here is no doubt under well-established precedent that Plaintiffs must first exhaust their administrative remedies. . . ."  (Def. Br., ECF 12-1, p. 21.)  Yet, the Plan Administrators have not cited a single case where exhaustion of administration remedies is required when a plaintiff makes an ERISA claim independent of benefits.  Here, the Plan Participants have not made a claim for benefits. Accordingly, the Plan Participants were not required to exhaust their administrative remedies.

**B. The Plans do not require exhaustion of administrative remedies.**

The language in the Plan documents highlight that the Plan Participants were not required to exhaust their administrative remedies.  (*See* Plan documents, ECF 12-3, 12-4)

Article VII of the CEDCP Plan provides in part that a participant who has "not received benefits . . . shall submit his or her **benefits claim** under the Plan in writing to the EDCP Committee."  (CEDCP Plan document, ECF 12-3, p. 27) (emphasis added).  Likewise, Article Ten of the ESSP II provides in part that a participant who has "not received **benefits** . . . shall submit his or her benefits claim under the Plan in writing to the EDCP Committee." (ESSP II Plan document, ECF 12-4, pp. 53) (emphasis added).

The unambiguous language in the Plan documents are explicit; exhaustion of administrative remedies are required only for claims of benefits. The Plan Participants do not have to exhaust their administrative remedies for claims independent of benefits.  *See Watts v. BellSouth Telcomms., Inc.*, 316 F.3d 1203, 1209-10 (11th Cir. 2003) ("If a plan claimant reasonably interprets the relevant statements in the summary plan description as permitting her to file a lawsuit without exhausting her administrative remedies, and as a result she fails to exhaust those remedies, she is not barred by the court-made exhaustion requirement from pursuing her claim in court.").

The Plan Administrators' reliance on *Lees v. Munich Reins. Am., Inc.*, 2012 U.S. Dist. LEXIS 49773 (D.N.J. April 9, 2012) is distinguishable.  There, a plan participant sought an award of benefits for a period of three years.  *Id.* at *1-3, 9. The court held that because Lees sought an award of benefits, Lees was required to exhaust his administrative remedies.  *Id.* at * 9.

The Plan Participants in this case do not seek to recover benefits, or even a calculation of benefits.  They only seek an answer to a simple question: Who is the Employer within the meaning of the Plans?  This question is not a claim for benefits. Therefore, the Plan Participants are not required to exhaust their administrative remedies.

## C. It would have been futile for the Plan Participants to exhaust their administrative remedies.

Even if the Plan Participants were required to exhaust their administrative remedies, the futility exception applies.  Courts have held that plan participants are not required to exhaust their administrative remedies if doing so would be futile. *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir. 1990) ("Although the exhaustion requirement is strictly enforced, courts have recognized an exception when resort to the administrative process would be futile.").  *See also Commc'ns Workers of Am. v. Am. Tel. & Tel. Co.*, 40 F.3d 426, 432, 309 U.S. App. D.C. 170 (D.C. Cir. 1994) ("The futility exception is, however, quite restricted, and has been applied only when resort to administrative remedies is clearly useless."); *Ludwig v.*

12

*Nynex Serv. Co.*, 838 F.Supp.769, 781-782 (S.D.N.Y. 1993) (surveying cases applying the futility exception).

The Plan Participants acknowledge that they have the burden of proving futility and "must make a 'clear and positive showing' that it actually would have been futile to pursue administrative relief." *Gambino v. Arnouk*, 232 F. App'x 140, 147 (3d Cir. 2007) (*quoting Harrow*, 279 F.3d 244, 249 (3d Cir. 2002)).

While the Complaint does not explicitly plead the futility exception,[3] this is certainly inferable from the Complaint. The Complaint states that CEC has disclaimed or attempted to disclaim liability under the Plans. (Complaint, ¶¶ 47, 64.) Such an inference is not unique. In an ERISA case involving delayed payments and the defendants' refusal to pay plan participants, the court determined that:

> The issue of exhaustion cannot profitably be addressed without discovery, and may be ripe for decision only at the summary judgment stage, if then. . . . The Complaint does not explicitly plead exhaustion or futility. It is inferable from the nature of the Employees' claims that they regard the administrative process as futile.

*Ciotti v. Meadowlands Hosp. Med. Ctr.*, 2015 U.S. Dist. LEXIS 2036, at *9-10 (D.N.J. Jan. 7, 2015).

---

[3] To the extent to which this Court determines that the Complaint must plead futility, the Plan Participants request leave to amend the Complaint to establish that exhaustion of any administrative remedies would have been futile.

The Plan Administrators press that the Plan participants must address five factors in order to prove that exhaustion of administrative remedies would have been futile. See *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d at 249 ("the *Harrow* factors"). There is a fatal flaw to this argument: the *Harrow* factors do not apply to "top hat" plans which is the case here. Equally important, the *Harrow* factors apply where there is a claim for benefits. Again, not this case. The authority cited by the Plan Administrators in regard to the futility exception relate to claims for benefits only. *See, e.g., Montvale Surgical Ctr., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 2013 U.S. Dist. LEXIS 15327 (D.N.J. Feb. 5, 2013) (plaintiff-surgical center sought full payment for services rendered); *Van Doren v. Capital Research & Mgmt. Co.*, 2010 U.S. Dist. LEXIS 138194 (D.N.J. Dec. 30, 2014) (plaintiff sought benefits under the Plan); *Menendez v. UFCQ Local 888 Health Fund*, 2005 U.S. Dist. LEXIS 17034 (D.N.J. Aug. 11, 2005) (plaintiff sought to recover severance benefits).

As set forth in the Complaint, CEDCP and ESSP II are "top hat" plans. Moreover, the Plan Participants have not made a claim for benefits. As such, the Plan Participants are not required to address, much less satisfy, any of the *Harrow* factors.

To the extent that they have a burden, the Plan Participants need only show that there is an inherent conflict of interest or, in the alternative, set forth evidence

14

of bias or bad faith.  *See, e.g., Smith v. Champion Int'l Corp.*, 573 F.Supp.2d 599, 608 (D. Conn. 2008) ("Allegations of bad faith . . . may be sufficient to establish futility"); *DePace v. Matsushita Elec. Corp. of Am.*, 257 F.Supp.2d 543, 560 (E.D.N.Y. 2003) (where plaintiffs allege that the defendant "intentionally or recklessly made false statements to induce their participation in the early retirement plan," the futility exception applies).

In the top hat plan at issue here, the Employer funds and administers benefits. This presents a real conflict of interest, and there is reason to question the impartiality of the Plan Administrators to determine who is the Plan Participants' Employer within the meaning of the Plans.

CEC has not only engaged in bad faith by stating that a subsidiary is liable for $27 million of the obligations under the deferred compensation plans (Complaint, ¶¶ 49-51, 61-63), but CEC has also attempted to disclaim liability under the Plans. By way of example, CEC stated that it would not honor its payment obligations under the CEDCP unless Plan participants agreed to certain new terms and conditions.  (Complaint, ¶ 47.)  Additionally, CEC asked ESSP II Plan participants to sign Proof of Claims "in order to preserve their current or future Deferred Compensation Plan rights and benefits." (Complaint, ¶ 64.)  Curiously, these Proof of Claims were being filed in connection with CEOC's bankruptcy proceedings, a subsidiary of CEC (which is not in bankruptcy).

15

CEC and the Plan Administrator's impartiality to decide who is the "Employer" within the meaning of the Plans is called into question under these circumstances. Although the application of the futility exception "involves a discretionary balancing of interests," there is little or no doubt that the futility exception applies. *Metro. Life Ins. Co.*, 501 F.3d at 279.

## POINT II

### THE PLAN PARTICIPANTS HAVE SUFFICIENTLY ALLEGED ALLEGATIONS OF INJURY.

The Plan Administrators challenge the standing of the Plan Participants.  To that end, the Plan Administrators contend that the Plan Participants in the ESSP II Plan "are being paid."  (Def. Br., ECF 12-1, p. 26)  The Plan Participants have not made any such allegation.

In support of their argument, the Plan Administrators point to Paragraph 66 of the Complaint.  That Paragraph quotes a CEC executive, "We are in the process of those distributions resuming now and that notice has gone out."  (Complaint, ¶ 66)  However, the Plan Administrators ignore the next paragraph, which states that subsequent to the announcement that distributions would be resumed, CEC sent Plan Participants an email reminding them to file Proof of Claim.  (Complaint, ¶ 67)

The ESSP II plan participants have not alleged that they have received payment.[4]  Accordingly, ESSP II Plan Participants have standing to litigate this matter.  To the extent to which this Court determines that it should be clarified that Plan Participants are not being paid and have not received benefits under the ESSP II, Plan Participants request leave to amend the Complaint.

## POINT III

### BECAUSE CEC IS A GUARANTOR OF THE PLAN AND CEOC IS NOT THE PLAN ADMINISTRATOR, IT IS NEITHER A NECESSARY NOR AN INDISPENSIBLE PARTY.

The Plan Administrators next contend that this action should be dismissed because CEOC, who has filed for bankruptcy protection, is a necessary and indispensable party.  As such, this action cannot continue.  The argument fails on two basic levels.

First, in any case brought pursuant to ERISA § 502(a)(1)(B), the proper defendant is the Plan itself, the fiduciary, and/or the plan administrator.  CEOC is none of these.  In fact, nothing in the Plan documents remotely suggest that CEOC is the Plan or the Plan administrator.  Thus, CEOC is not a proper defendant.

---

[4] Certain other plan participants have also denied ever receiving payment.  See *In re Caesars Entertainment Operating Company, Inc*., et al., Case No. 15-01145 (N.D. Ill. July 21, 2016) (ECF 4062, ¶ 6.)

Second, complete relief can be accorded without CEOC's presence. The Complaint alleges that CEC has claimed "ownership" of the assets under the Plans. (Complaint, ¶ 58.) The Complaint also alleges that CEC is CEOC's guarantor. (*Id.*, ¶ 37.) Thus, CEOC is not at risk of being prejudiced. Since CEOC is not a necessary party, there is no need to consider the question as to whether CEOC is an indispensable party. But assuming *arguendo* that CEOC is a necessary party (which it clearly is not), CEOC is not an indispensable party because the issue in this action is separate and unrelated to the bankruptcy proceeding; CEOC does not have the authority to interpret the Plan documents; and the Plan Participants would have no other remedy if this action was dismissed.

**A. CEOC is not a proper defendant.**

In any ERISA case brought pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), the proper defendant is the Plan itself, the fiduciary, and/or the person who controls the administration of benefits under the plan. *Evans v. Employee Benefit Plan, Camp Dresser & McKee, Inc.*, 311 Fed. Appx. 556, 558 (3d Cir. 2009) ("in a claim for wrongful denial of benefits under ERISA, the proper defendant is the plan itself or a person who controls the administration of benefits under the plan."); *Graden v. Conexant Systems Inc.*, 496 F.3d 291, 301 (3d Cir. 2007) (same); *Carducci v. Aetna U.S. Healthcare*, 247 F.Supp.2d 596, 607-609 (D.N.J. 2003) (same); *Curcio v. John Hancock Mutual Life Insurance Co.*, 33 F.3d 226, 233

(3d Cir. 1994) (same).  *See also Garratt v. Knowles*, 245 F.3d 941, 949 (7th Cir. 2001) (holding that Plan participants seeking benefits under a "top hat" plan can only sue the Plan itself).

In *Evans v. Employee Benefit Plan, Camp Dresser & McKee, Inc.*, the plaintiff brought an ERISA action for benefits under the plan against the plan administrator, Metlife, and her employer, Camp Dresser & McKee, Inc ("CDM").  311 Fed. Appx. 556, 557 (3d Cir. 2009).  The District Court held that CDM was not a proper defendant because it did not exercise any authority or responsibility for administering benefits under the plan.  *Id.* at 558-559.  Additionally, the plan documents made clear that Metlife, not CDM, had discretion to interpret the terms of the plan.  *Id.* at 559.  The District Court thus granted CDM's motion for summary judgment, and the Third Circuit affirmed.  *Id.*

Similarly, in *Garratt v. Knowles*, 245 F.3d 941 (7th Cir. 2001), the plan participant of a top hat plan sued his employer for benefits.  *Id.* at 943-944.  The participant did not, however, sue the plan itself.  On a motion to dismiss, the employer argued that the plan participant brought the claim against the wrong party.  *Id.* at 948.  The District Court granted the defendant's motion to dismiss, and the Seventh Circuit affirmed.  *Id.* at 949 (plan participants "cannot escape the rule . . . that 'ERISA permits suits to recover benefits *only against a Plan as an entity*'") (internal citations omitted; italics in original).

19

Although the cases cited above address plan participants seeking benefits under the plan, that does not change the analysis because the Plan Participants in this case brought an action under ERISA § 501(a)(1)(B), which provides, in part, that a plan participant can bring an action to *clarify* the Plans.

Here, CEOC is neither the Plan nor the Plan administrator.   The Plan Participants have pled that the Plan Administrators are the "plan administrator" of the respective Plans.  (*See* Complaint, ¶¶ 17, 19)  Only the Plan Administrators (the Plans themselves) are in a position to interpret the Plan documents and tell us who the Plan Participants' Employer is within the meaning of the Plans.  Accordingly, the Plan Administrators' motion to dismiss for failure to join a necessary party is without merit.

## B. CEOC is not a necessary party.

Because CEOC is not a proper party to this action, there is no need to consider whether CEOC is a necessary party.  The Plan Administrators, moreover, do not cite a single case where a subsidiary is required to be joined in order to clarify who is the employer within the meaning of the plans.  However, assuming *arguendo* that CEOC should be added as a defendant (which it should not), the argument of the Plan Administrators fails for other reasons.

20

1.  <u>CEOC's presence is not required for complete relief.</u>

Federal Rule of Civil Procedure 19(a) states in pertinent part that a person shall be joined if complete relief cannot be accorded.  Here, complete relief can be accorded without CEOC's presence.  The Plan Administrators are the Plans, which are the only entities that have the authority to interpret the Plan documents.  By way of example, the CEDCP plan document states that "the EDCP Committee shall have the power and discretion to construe and interpret this Plan." (CEDCP Plan document, ECF 12-3, p. 29)  Likewise, the ESSP II plan document states that the EDCP Committee "shall have the power and discretion to construe and interpret this Plan. . . ." (ESSP II Plan document, ECF 12-4, p. 52).  As such, no other party is necessary to be joined in order to clarify who is the Employer within the meaning of the Plans.

The Plan Administrators contend that proceeding with this case without CEOC would "impair or impede [CEOC's] ability to protect its interests" and a ruling determining that CEOC is responsible for the liabilities under the Plans "will impact the assets and claims against the CEOC estate."  (Def. Br., ECF 12-1, p. 30.)  This is false for a number of reasons.

First, the respective plan documents explicitly state that Harrah's Entertainment, Inc. (which has been renamed Caesars Entertainment Corporation ["CEC"]) is responsible for the payment of contributions to plan participants.

(Complaint, ¶¶ 18, 20.)   Not surprisingly, the Plan documents support Plan Participants' allegations.  (*See* Plan documents, ECF 12-3, 12-4.)  CEC is a separate company from CEOC, and CEC is not in bankruptcy proceedings.

Second, CEC executives stated that it would "claim ownership of the assets" (Complaint, ¶ 58) and had in fact assumed at least 12 million dollars of the liabilities at the CEC level.  (*Id.*, ¶ 43.)

Third, Russell Goldich, VP of Compensation at CEC personally told one of the Plan Participants that CEC would be jointly and severally liable.  (*Id.*, ¶ 62.)

2.   There is no risk of "inconsistent rulings."

The Plan Administrators' second argument – that allowing this matter to proceed without CEOC's presence may result in "inconsistent rulings" – is conclusory.   That Plan Participants have filed Proofs of Claims in the CEOC bankruptcy proceeding does not alter Plan Participants' right to seek a judicial adjudication as to who is the Employer within the meaning of the Plans.  Nor does it diminish CEC's obligation for unpaid plan amounts.  Equally important, the Plan Participants believe that because of complex corporate transactions, complex bankruptcy proceedings, and deceptive actions, CEC is seeking to disclaim liabilities under the ESSP II and CEDCP Plans.  (Complaint, ¶ 32.)

Indeed, despite the plan document's explicit language that CEC is responsible for the Plans, CEC has attempted to disclaim liabilities under the Plans by instructing

22

the Plan Participants to sign written agreements to obtain payment and to file Proofs of Claims in the CEOC bankruptcy proceedings. (*Id.*, ¶¶ 47, 64, 67)

After CEC was pressured by the Nevada Casino Commission, CEC executives then stated that it "booked" the top hat plan assets "at the CEC level." (*Id.*, ¶ 66) Yet, as described above, CEC continued to attempt to disclaim liabilities under the Plans.

The Plan Participants seek only declaration as to who is the Employer within the meaning of the Plans. If it is determined that the Employer is CEC (which it most likely is), then there is no risk of harm presented to CEOC. If, however, it is determined that the Employer is CEOC, CEC has already agreed that it is jointly and severally liable for the Plans. Either way, there would be no risk of "inconsistent rulings."

**C. CEOC is not an indispensable party.**

Since CEOC is not a necessary party, there is no need to determine whether CEOC is an indispensable party. To the extent to which the court determines that CEOC is a necessary party, none of the four factors support dismissal of this action. Fed. R. Civ. P. 19(b).

First, a determination as to who is the Employer within the meaning of the Plan would not prejudice CEOC. Russell Goldich, a key executive at CEC personally told one of the Plan Participants that CEC is jointly and severally liable

23

for the assets of the Plans.  (Complaint, ¶ 62)  Additionally, CEC executives stated that it would "claim ownership of the assets." (*Id.*, ¶ 58)  In fact, CEC has thus far assumed at least 12 million of the liabilities at the CEC level (*Id.*, ¶ 43) and is continuing to investigate why the assets are showing up on CEOC's books.  (*Id.*, ¶¶ 42, 43, 58, 60)  In light of these facts, and CEC's asserted ownership of the assets, there is no risk of prejudice to CEOC.

Second, this is an action to clarify who is the Employer within the meaning of the Plans; it is not an action to collect benefits.  As more fully argued under Point IV below, this action is not "related to" CEOC's bankruptcy proceeding and would not have any economic impact on CEOC's bankruptcy estate.

Third, the Plan Administrators have not identified any witnesses who have testified in the bankruptcy proceeding and who might be called to testify in this action.

Finally, if this case is dismissed, the Plan Participants will not have an adequate remedy.  Only the Plan Administrators (the Plans themselves) have the authority to interpret the Plan documents, not CEOC.  The Proofs of Claims that have been filed in the bankruptcy proceeding does nothing to change that fact.  Indeed, the Proofs of Claims is an attempt by CEC to relieve itself of the liabilities under the Plans.  If this case is dismissed, CEC will continue to attempt to relieve

itself of the liabilities under the Plans, as it has done in the past.  (*See* Complaint, ¶¶ 47, 64, 67)

## POINT IV

## THE RELIEF SOUGHT BY THE PLAN PARTICIPANTS IS INDEPENDENT OF THE ISSUES IN THE CEOC BANKRUPTCY.

Hedging their bet that the action will not be dismissed, the Plan Administrators urge the Court to transfer the case the Northern District of Illinois as New Jersey is not the proper venue.

### A. This action is not "related to" CEOC's bankruptcy proceeding.

Contrary to the Plan Administrators' assertions, the Third Circuit's test for determining whether a civil proceeding is "related to" a bankruptcy proceeding is narrow.  The test is not simply whether a civil action could "conceivably" have an effect on a bankruptcy proceeding, but "whether the allegedly related lawsuit would affect the bankruptcy **without the intervention of yet another lawsuit**."  *In re Federal-Mogul Global, Inc*., 300 F.3d 368, 382 (3d Cir. 2002) (emphasis supplied).

Put in another way, if the outcome of a civil action would not directly affect the bankruptcy estate from an economic standpoint, the civil action is not "related to" the bankruptcy proceeding.  This is consistent with a recent New Jersey District Court opinion, which held that

> [w]hile seemingly broad, there is a limit to what is 'conceivable,' and more than the 'mere potential' for a

25

civil proceeding 'to impact upon [a] debtor's estate' is required in order to create 'related to' jurisdiction. Moreover, if a debtor's liability cannot be fixed in the supposedly related civil case and a **second proceeding is required**, then 'related to' jurisdiction does not exist.

*Prudential Ins. Co. of Am. v. Barclays Bank PLC*, 2013 U.S. Dist. LEXIS 8992 (D.N.J. Jan. 22, 2013) (emphasis supplied) (*citing Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747, 753 (E.D. Pa. 2003)) ("Mere potential impact upon the debtor's estate is insufficient. Contingent liability will not suffice. The necessity of future action to fix the debtor's liability after resolution of the pending lawsuit precludes the exercise of 'related to' jurisdiction."); see also *Celotex Corp v. Edwards,* 514 U.S. 300, 308 n. 6 (1995) ("bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor.").[5]

The facts that led the Third Circuit to develop the "related to" determination test is helpful to understanding how the test can be properly applied. In *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984), Higgins initiated an action in Pennsylvania state court against Pacor, Inc. for damages sustained from exposure to asbestos. *Id.* at 986. Pacor then impleaded the Johns-Manville Corporation (the original

---

[5] The Seventh Circuit put it more plainly: "A case is 'related' to a bankruptcy when the dispute 'affects the amount of property for distribution or the allocation of property among creditors.'" *Matter of FedPak Sys., Inc.*, 80 F.3d 207, 213-214 (7th Cir. 1996). That same court also held that "common sense cautions against an open-ended interpretation of the 'related to' statutory language 'in a universe where everything is related to everything else.'" *Id.*, at 214 (citations omitted).

manufacturer of the asbestos), which filed a chapter 11 bankruptcy petition in bankruptcy court in the Southern District for the District of New York.  *Id.*  Seizing an opportunity, Pacer removed the state court action to the District Court for the Eastern District of Pennsylvania, then moved to transfer the action to the bankruptcy court where the Johns-Manville Corporation bankruptcy proceeding was taking place.  *Id.*  When the District Court for the Eastern District of Pennsylvania determined that the New York bankruptcy court did not have jurisdiction to address Higgins' claims against Pacor because it was not "related to" the Johns-Manville bankruptcy proceeding and remanded the case back to state court, Pacor appealed.  *Id.* at 987.  The Third Circuit affirmed the District Court.  *Id.* at 995.  Significantly, the Third Circuit noted that if the dispute between Higgins and Pacer was resolved in favor of Higgins, the Johns-Manville bankruptcy estate would not be affected in any way until Pacor brought a second lawsuit against Johns-Manville for indemnification.  *Id.*

Like *Pacor*, this action is between Plan Participants and the Plan Administrators, neither of which has filed for bankruptcy.  Like *Pacor*, the Plan Participants' action against the Plans would have no direct effect on the assets of CEOC's bankruptcy estate.  The equitable remedy that the Plan Participants seek from the Plans would present no direct economic effect on CEOC's bankruptcy estate and is a mere precursor to **a second lawsuit**, which Plan Participants may or

27

may not initiate, and which CEOC may or may not be a defendant.  *See Pacor*, 743 F.2d at 995.  Thus, a proper application of the "related to" test requires that this Court find that this action is not "related to" CEOC's bankruptcy proceeding.

The Plan Administrators rely heavily on *Hilton Worldwide, Inc. v. Caesars Entertainment Corp.*, 532 B.R. 259 (E.D. Va. 2015).  However, the Plan Administrators mischaracterize that case and fail to put it in context.  There, Hilton instituted four causes of action directly against CEC for failing to make contributions to an ERISA plan to the tune of nearly 18 million dollars.  *Id.* at 265-266.  Hilton's claim against CEC was precipitated by an earlier case where a class of plan participants alleged certain ERISA violations and prevailed in summary judgment. *Id.* at 265-266.  As a result, Hilton and CEC were required to make certain contributions to the plan.  *Id.* at 266.  Subsequently, CEC failed to make the required contributions.  *Id.*  In its complaint, Hilton pled that CEC and CEOC were jointly and severally liable for failing to make the contributions.  *Id.*  at 267.  Since Hilton sought monetary damages from *both* CEC and CEOC, the court determined that Hilton's action was "related to" the bankruptcy estate (because it would have an effect on the bankruptcy estate), a transfer to the bankruptcy court in Illinois was proper.  *Id.* at 272-275.

Unlike *Hilton*, however, the Plan Participants filed suit against the Plans, not against CEC or CEOC.  The Plan Participants have not alleged breach of contract

claims, and they do not seek monetary damages from either CEC, CEOC, or the Plans. Rather, the Plan Participants seek only equitable relief from the Plans – they only seek an answer to a simple question: who is the Plan Participants' Employer within the meaning of the Plans? Again, the answer to that question would not have a direct impact on CEOC's bankruptcy estate. In other words, the answer to the Plan Participants' question is a mere precursor to **a second lawsuit**, which the Plan Participants may or may not initiate, and which CEOC may or may not be a defendant.

For the reasons set forth above, this equitable action against the Plans is not "related to" CEOC's bankruptcy proceeding. As such, venue is proper in this District.

### B. Venue is proper in the District of New Jersey.

District courts weigh a number of factors in considering whether to transfer venue only after it has determined that the subject action is "related to" a bankruptcy proceeding. 28 U.S.C. § 1412; *Larami Ltd. v. Yes! Entm't Corp.*, 244 B.R. 56, 61 (D.N.J. 2000) (*citing Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995)). But there is no need to consider any of these factors because, as argued above, this action is not "related to" CEOC's bankruptcy proceeding.

The Plan Administrators' reliance on *Hilton Worldwide, Inc. v. Caesars Entertainment Corp.*, 532 B.R. 259 (E.D. Va. 2015) is unavailing. As explained

above, Hilton's action was "related to" CEOC's bankruptcy proceeding because it would have had a direct economic impact on CEOC's bankruptcy estate. *Id.* at 272-275. Only after the Virginia Court determined that Hilton's action was "related to" the bankruptcy proceeding did the Court weigh the factors as to whether the case should be transferred to Illinois.

The other cases that the Plan Administrators cite clearly show that the courts weigh the § 1412 factors of whether to transfer the case only **after** the courts determined that the action was "related to" the bankruptcy proceeding. *See, e.g., Watermark Condo. Residences Ass'n, Inc. v. WCI Communities, Inc.*, 2013 U.S. Dist. LEXIS 75842 * 10-14 (D.N.J. May 30, 2013) (weighing factors to transfer venue after having determined that the action was "related to" the bankruptcy proceeding); *Miller v. Chrysler Group, LLC*, 2012 U.S. Dist. LEXIS 173791 * 10-27 (D.N.J. Dec. 7, 2012) (same); *Tatum v. Chrysler Group, LLC*, 2011 U.S. Dist. LEXIS 144831 * 3-9 (D.N.J. Dec. 16, 2011) (same); *Abrams v. Gen. Nutrition Co.*, 2006 U.S. LEXIS 68574 * 30-33 (D.N.J. Sept. 25, 2006) (same).

Since this action is not "related to" CEOC's bankruptcy proceedings, and since venue properly belongs in this District, there is no need to consider any of the factors to determine whether this action should be transferred to Illinois.

### C. ERISA mandates that this action remain in a U.S. District Court.

ERISA Section 502(e), 29 U.S.C. § 1132(e) states in part:

> [T]he district courts of the United States shall have **exclusive jurisdiction** of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title.

(Emphasis supplied.)

This is a civil action under section 1021(f)(1). Therefore, venue in this District is proper and must not be moved to a bankruptcy court.

Furthermore, even if this is a claim for benefits (which it is not), jurisdiction must be either in this district court, or a New Jersey state court, as determined by the plaintiff. This is supported by ERISA statute, which provides in part:

> State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.

29 U.S.C. § 1132(e)(1).

Accordingly, the Plan Administrators' motion to transfer venue must be denied.

### Conclusion

The Plan Participants were not required to exhaust their administrative remedies; and if they were, it would have been an exercise in futility. CEOC is not a proper party to this action; nor is CEOC a necessary or indispensable party. This

action is not "related to" CEOC's bankruptcy proceeding; the question as to who is the Employer within the meaning of the Plans has no direct effect on CEOC's bankruptcy estate.  Venue properly belongs in this District.  Accordingly, the Plan Administrators' motion to dismiss the complaint or transfer venue must be denied.

**JARDIM, MEISNER, & SUSSER, P.C.**
Attorneys for Plaintiffs

Dated: July 18, 2016                By:  /s/ Richard S. Meisner
Richard S. Meisner
30-B Vreeland Road, Suite 201
Florham Park, New Jersey 07932
(973) 845-7640
rich@jmslawyers.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel of record certifies that the foregoing document was filed electronically with the Clerk of the Court by using the ECF system, which will send a notice of electronic filing to Defendants' counsel of record in the above-captioned action.

Dated: July 18, 2016          By:  /s/ Richard S. Meisner
                              Richard S. Meisner
                              30-B Vreeland Road, Suite 201
                              Florham Park, New Jersey 07932
                              (973) 845-7640
                              rich@jmslawyers.com